PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL CLAY, | ) | |
| | ) | CASE NO. 1:19CV1916 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| MCKALEE WEIDNER, *et al.,* | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF Nos. 7, 15] |

Pending are Defendants' motion to dismiss (ECF No. 7) and motion to strike Plaintiff's

sur-reply (ECF No. 15). The motion to dismiss has been fully briefed.  ECF Nos. 7, 11, 13, and

14.  For the reasons explained below, the motion to dismiss is granted in part and denied in part.

The motion to strike is granted.

## I.  Introduction

Plaintiff Michael Clay is a prisoner confined in a state correctional institute in Lebanon,

Ohio.  This civil rights lawsuit stems from alleged interactions with Defendants at Mansfield

Correctional Institute ("Mansfield").

### A.  Law Library

While at Mansfield, Plaintiff was a law clerk in the prison's law library.  ECF No. 1 at

PageID #: 3, ¶ 20.   Plaintiff alleges that when he attempted to make copies of affidavits from a

trauma nurse and forensic pathologist for his post-conviction proceedings, Defendant McKalee

Weidner, the law librarian, prohibited him from doing so.  *Id.*  Plaintiff subsequently filed a

(1:19CV1916)

complaint against Weidner to her supervisor, alleging that she was misapplying prison policy and violating his access to the courts.  *Id.* ¶ 21. The complaint was denied.  *Id.* at PageID#: 4, ¶ 22. Plaintiff subsequently filed a grievance against Weidner.  His grievance was denied by Defendant Assistant Institutional Inspector Charles Moore.  *Id.* ¶¶ 22-23.

Weidner learned of the grievances, confronted Plaintiff about the grievances, and fired Plaintiff from his position as a law clerk on August 10, 2017.  *Id.* ¶ 26.  After he was fired, Plaintiff filed an informal complaint alleging that Weidner had retaliated against him when she fired him.  *Id.* at PageID #: 5, ¶ 30.  Plaintiff alleges that Weidner fabricated an evaluation of Plaintiff's work performance to justify firing him.  *Id.* ¶ 31.  A meeting was subsequently held with Plaintiff, Weidner, and Weidner's supervisor wherein Plaintiff was reinstated as a law clerk. *Id.* at PageID #: 6, ¶ 36.

According to Plaintiff, Weidner continued to harass Plaintiff after he was reinstated by deleting his personal legal documents along with those of other inmates he was assisting.  *Id.* at PageID #: 7, ¶ 39.

**B.  Digital Grievance Procedure**

Plaintiff alleges that the grievance procedure was digital and required an inmate to draft his complaint at a kiosk system.  *Id.* at PageID #: 4, ¶ 27.  He claims that the grievance procedure operates under a time system that prevents an inmate from submitting the grievance if not completed within a set time frame.  *Id.* at PageID #: 4-5, ¶¶ 27-28.

2

(1:19CV1916)

### C.  Assisting Other Inmates, Misconduct Report, and Administrative Segregation

In late May 2018, Plaintiff attempted to type out complaints, at the kiosk, against Weidner for other prisoners.  *Id.* at PageID #: 7, ¶ 42.  R. Bacon, Weidner's other supervisor, allegedly told the inmates that the documents were not deleted but merely moved.  *Id.* ¶ 44.  In addition, Bacon informed the inmates that Plaintiff could not help them because he was no longer associated with the law library.  *Id.*  Plaintiff again attempted to file a grievance, claiming that Bacon's response was nonresponsive to the other inmates' concerns.  *Id.* ¶ 46.  This grievance was denied and Defendant Assistant Institutional Inspector Charles Moore noted that the grievance was filed by Plaintiff, not by the inmate whose name was associated with the file; this, the report indicated, was not permitted.  *Id.* ¶ 47.

On June 12, 2018, Plaintiff met with Defendant Institutional Inspector Lisa Booth and her assistant, Defendant Charles Moore.  *Id.* ¶ 49.  Plaintiff claims that Booth informed him he could not assist other inmates with their grievances, a conduct report would be issued against him, and he was being restricted from access to the grievance procedure.  *Id.* at PageID #: 8-9, ¶¶ 49-50.  Plaintiff insists that there was never a policy prohibiting inmates from working with one another to draft grievances against correctional officers.  *Id.* at PageID #: 8, ¶ 48.

Booth allegedly responded that she had spoken to Defendant Chief Inspector Roger Moore beforehand and they both agreed to restrict Plaintiff's grievance access due to Plaintiff's abuse of the grievance system.  *Id.* at PageID #: 9, ¶ 51.  In response, Plaintiff told them that he planned to sue them for restricting his right to file grievances.  *Id.*  On that same day, Plaintiff was placed in administrative segregation for "falsifying documents, disrespect[ing] [Booth], and disobey[ing] a

3

(1:19CV1916)

direct order." *Id.* ¶ 52.  Plaintiff alleges Chief Inspector Roger Moore ordered that he be placed in

administrative segregation.  *Id.* at PageID #: 17, 107.

### D.  Rules Infraction Board Hearings

Plaintiff was called to a hearing before the Rules Infraction Board ("RIB") led by

Defendant Lieutenant Kirk Dolby on June 22, 2018.  *Id.* at PageID #: 9, ¶ 56.  According to

Plaintiff, he was charged with three offenses: forgery, disobeying a direct order, and disrespecting

an officer.  *Id.* ¶ 52.  Plaintiff maintains that he was found not guilty of the first two offenses but

was found guilty of offense of disrespecting an officer.  *Id.* at PageID #: 10, ¶ 60.  When

announcing that Plaintiff was guilty of the aforementioned offense, Dolby allegedly stated that he

could not permit Plaintiff to be found not guilty on all the offenses because it was Plaintiff's word

against Booth's.  *Id.*  Because he was found guilty of one of the offenses, Plaintiff was placed

back in administrative segregation.  *Id.* ¶ 61.  Although Plaintiff was set to be released from

administrative segregation on June 25, 2018, he was not released that day.  *Id.* ¶¶ 61-62.

On June 28, 2018, the RIB held another hearing to reconsider the charges against Plaintiff.

*Id.* ¶ 63.  Before the hearing, Plaintiff was allegedly informed to leave his written defenses in his

cell.  *Id.* ¶ 64.  According to Plaintiff, Defendant Scott Basquin, the Warden's assistant, ordered

the matter be remanded back to RIB to reconsider the charges against Plaintiff and permit the

charging officer to testify.  *Id.*  Plaintiff alleges that Basquin, Chief Inspector Roger Moore, and

Booth all engaged in the decision to amend the offense brought against Plaintiff.  *See id.* at

PageID #: 17, ¶ 109.  The forgery offense, which Plaintiff was adjudicated not guilty, was

amended to a violation of mail rule.  *Id.* at PageID #: 11, ¶ 66.  Booth, who sat with Dolby at the

4

(1:19CV1916)

hearing, allegedly declared: "[M]e and the chief inspector still think you're guilty of forgery, and you ought to be found guilty." *Id.*  Plaintiff alleges that Booth sat behind the desk of Dolby and served as a member of the RIB panel reviewing the charges.  *Id. ¶¶ 65, 70.*  At this second hearing, Booth testified and Plaintiff was found guilty of the amended offense (instead of forgery) and all other charges in Booth's conduct report.  *Id. ¶¶ 67-68.*  Plaintiff was placed back in administrative segregation for fourteen days.  *Id. ¶ 68.*

Plaintiff requested the disposition of the hearing in writing so that he could appeal.  *Id.* Plaintiff claims that he never received the disposition.  *Id. at PageID #: 12, ¶ 75.*  Because he was prohibited from filing any grievances, Plaintiff claims he was unable to appeal the RIB's ruling on time.  *Id.*  Plaintiff also alleges this resulted in him being unable to apply to Ashland University. *Id. ¶ 78.*

### E.  Plaintiff's Claims

Plaintiff filed this civil rights action against Defendants under 42 U.S.C. § 1983.  The Court construes Plaintiff's Complaint as raising the following claims against Weidner: (1) First Amendment denial of access to the courts; and (2) First Amendment retaliation.[1]  The remaining claims raised against the other Defendants are: (1) First Amendment retaliation; (2) Fourteenth Amendment Due Process violations; and (3) civil conspiracy.  Plaintiff raises all of his claims

---

[1] Defendants only construe Plaintiff's Complaint as alleging denial of access to the court against Weidner.  *See* ECF No. 7 at PageID #: 103.  As explained below, however, Plaintiff provides makes a claim for First Amendment retaliation against Weidner.

(1:19CV1916)

against Defendants in their individual and official capacities.  Defendants subsequently filed the pending motion to dismiss.

## II. Standard of Review

To survive a Fed. R. Civ. P.12(b)(6) motion to dismiss, a plaintiff's complaint must allege enough facts to "raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Fed. R. Civ. P. 8(a)(2) requires only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A complaint requires "further factual enhancement," which "state[s] a claim to relief that is plausible on its face." *Id.* at 557, 570.  A claim has facial plausibility when there is enough factual content present to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When a claim lacks "plausibility in th[e] complaint," that cause of action fails to state a claim upon which relief can be granted. *Twombly*, U.S. 550 at 564.

Additionally, when a party files a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P.12(b)(1) in conjunction with other Rule 12 motions, the court generally considers the Rule 12(b)(1) motion first. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case

6

(1:19CV1916)

without first determining that it has jurisdiction[.]").  "It is the plaintiff's burden . . . to prove that this court has jurisdiction over [the plaintiff's] claim." *Kiser v. Reitz*, 765 F.3d 601, 607 (6th Cir. 2014).  "[W]here a defendant argues that the plaintiff has not alleged sufficient facts in her complaint to create subject matter jurisdiction, the trial court takes the allegations in the complaint as true." *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003).

### III.  Discussion

#### A.  Eleventh Amendment Immunity

 Actions brought against the State or an "arm of the state" are subject to the doctrine of sovereign immunity under the Eleventh Amendment.  *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005).  The "arm of the state" includes state officials in their official capacity. *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007).  Although a state may waive its sovereign immunity, Ohio has not done so.  *McCormick v. Miami Univ.*, 693 F.3d 654, 664 (6th Cir. 2012).  Accordingly, any claims raised against Defendants in their official capacities and seeking monetary damages must be dismissed.

Plaintiff's claims for monetary relief against Defendants in their individual capacities, however, are not barred by the Eleventh Amendment.  *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991) ("That is, the Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983.")

#### B.  Injunctive Relief

Under the *Ex Parte Young* exception, Eleventh Amendment immunity does not attach to suits "filed against a state official for purely injunctive relief enjoining the official from violating

7

(1:19CV1916)

federal law." *Ernst*, 427 F.3d at 358-59 (citing *Ex parte Young*, 209 U.S. 123, 155-56 (1908)).

Because, however, Plaintiff has been transferred to a different facility since he filed this action,

his claims seeking injunctive relief are moot.  *See Parks v. Reans*, 510 F. App'x 414, 415 (6th Cir.

2013) ("A prisoner's request for injunctive and declaratory relief is moot upon his transfer to a

different facility.") (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)).  Additionally, to the

extent Plaintiff seeks injunctive relief against Defendants in their official capacities, those claims

are dismissed as moot.

In sum, the claims against Defendants in their official capacities, for monetary damages

and injunctive relief, are dismissed.  At this juncture, the remaining claims are those brought

against Defendants in their individual capacities for monetary damages.  The Court considers the

remaining claims against each individual Defendant in their individual capacities for monetary

damages below.

### C.  Claims against McKalee Weidner

#### 1.  Statute of Limitations

Plaintiff's claims are governed by a two-year statute of limitations.  *See Browning v.

Pendleton*, 869 F.2d 989, 990-91 (6th Cir. 1989).  "[F]ederal law governs the question of when

that limitations period begins to run."  *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984)

(citations omitted).  The statute of limitations is measured from the "two years from the date that

[Plaintiff] knew or should have known of his injury."  *Hunt v. City of Cleveland*, 563 F. App'x

404, 407 (6th Cir. 2014) (citations omitted).  To determine when the statute of limitations began

accruing, the Court must "focus[] on the harm incurred, rather than the plaintiff's knowledge of

(1:19CV1916)

the underlying facts which gave rise to the harm." *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991) (citation omitted). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Sevier*, 742 F.2d at 273.

Plaintiff's Complaint is considered filed with the Court on August 16, 2019, the date he "executed" the pleading. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) ("[A] pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court.") (citations omitted). Based on the facts alleged, however, the statute of limitations for his retaliation claim pertaining to being fired from his position as a law clerk began to run on August 10, 2017, the date that he was terminated. *See Hunt*, 563 F. App'x at 407 ("To the extent that Hunt bases any of his constitutional claims on the car accident, the district court was correct in holding that such claims are barred by the statute of limitations, because the harm was known to Hunt on the date of the accident . . . .") This is underscored by the fact that Plaintiff filed a grievance against Weidner for retaliation on or around August 10, 2017 and that he alleges Weidner filed a false evaluation against him to justify firing him that same day. *See* ECF No. 1 at PageID #: 4-5, ¶ 26-31. Because Plaintiff filed his Complaint on August 16, 2019, six days past the statute of limitations for his retaliation claim against Weidner regarding his firing, this claim is dismissed as time-barred.

Plaintiff's First Amendment claims against Weidner, however, are not entirely time-barred. Plaintiff alleges that after he was restored to his position as a law clerk on August 16, 2017, "Weidner continued with her campaign of harassment against Clay, *e.g.* Weidner began to

9

(1:19CV1916)

delete his personal legal documents and the documents of the inmates he was assisting." ECF No. 1 at PageID #: 7, ¶ 39.  Among the documents Plaintiff alleges were deleted include his own legal files and other inmates' motions and a federal habeas brief. Id.  Plaintiff maintains that although Weidner generally deleted documents from the law library computers after thirty days, his documents, and those of the inmates he assisted, were deleted sooner. Id.  It is unclear exactly when Plaintiff alleges this conduct occurred but he does indicate that it was after August 16, 2017. Additionally, Plaintiff filed a complaint against Weidner regarding this practice in May 2018 and requested a meeting with Lisa Booth and Charles Moore two weeks before June 12, 2018 to speak about ongoing issues he had with Weidner. Id. at PageID #: 7-8, 42-49.  The alleged retaliatory conduct of deleting legal documents falls within the two-year statute of limitations. To the extent that any of Plaintiff's claims against Weidner for retaliatory conduct concern behavior that occurred after August 16, 2017, Plaintiff's First Amendment claims are not barred.

### 2. **Merits of Claims Against Weidner**

Below, the Court considers whether Plaintiff's denial of access to the courts and his First Amendment retaliation claims against Weidner are actionable.

### a. **Denial of Access to the Courts Claim**

In a denial of access to the courts claim, the plaintiff alleges that a government officials "barr[ed] the courthouse door by concealing or destroying evidence so that the plaintiff is unable to ever obtain an adequate remedy on the underlying claim." Flagg v. City of Detroit, 715 F.3d 165, 173 (6th Cir. 2013).  To succeed on this claim, Plaintiff must demonstrate: (1) a non-frivolous underlying claim; (2) obstructive actions by state actors, (3) substantial prejudice to

10

(1:19CV1916)

the underlying claim that cannot be remedied by the state court; and (4) a request for relief which the plaintiff would have sought on the underlying claim and is now unattainable. *Id.* (citations and internal quotations omitted).  The right of access to the courts is directly related to an underlying claim, without which a plaintiff cannot be said to have suffered injury by being shut out of court. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  Plaintiff must therefore "plead and prove prejudice stemming from the asserted violation." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  "Examples of actual prejudice include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Fitts v. Sicker*, 232 F. App'x 436, 442 (6th Cir. 2007) (citations omitted).

Plaintiff does not allege that, after Weidner allegedly deleted his legal files, he was unable to file those legal documents despite any delay caused, or was precluded from seeking legal redress in those cases.[2] *See Weatherspoon v. Woods*, No. 16–1277, 2017 WL 3923335, at *3 (6th Cir. Feb. 24, 2017); *Winburn v. Howe*, 43 F. App'x 731, 733-34 (6th Cir. 2002) (finding that "a prison official's intentional destruction of legal materials that delays, but does not preclude, a prisoner's access to courts" is insufficient to state a denial of access to the courts claim).  Against this backdrop, Plaintiff has failed to demonstrate any actual prejudice he might have incurred. *See Houston v. Seng*, 20 F. App'x 384, 385 (6th Cir. 2001).

Accordingly, Plaintiff's denial of access to the courts claim against Weidner is dismissed.

---

[2] As explained above, Plaintiff cannot anchor his denial of access to the courts claim on any alleged interference occurring before August 16, 2017.

11

(1:19CV1916)

### b. Retaliation

The Court construes Plaintiff's Complaint as raising a First Amendment retaliation claim against Weidner regarding the deletion of his legal files.  To properly plead retaliation, Plaintiff must show: "(1) the plaintiff engaged in protected conduct; (2) defendant took an adverse action against plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between the first two elements, that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Clark v. Corr. Corp. of Am.*, 113 F. App'x 65, 68 (6th Cir. 2004) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

Plaintiff engaged in protected conduct under the First Amendment when he filed a grievance against Weidner.  *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

Plaintiff has also demonstrated that Weidner took an adverse action against him. Confiscating legal documents from an inmate is sufficient to demonstrate that prison officials engaged in an adverse action.  *See Bell v. Johnson*, 308 F.3d 594, 604-05 (6th Cir. 2002); *see also Clark*, 113 F. App'x at 67 ("Notably, plaintiff did not allege that the search of his cell and *the seizure of his legal materials was retaliatory*, and documents appended to plaintiff's complaint reflect that the legal materials were returned to plaintiff.") (emphasis added).  The Court sees no meaningful difference between grabbing printed legal documents in an inmate's cell and deleting documents from the law library computer before Plaintiff can file them.  Both actions can arguably deter the party being retaliated against from exercising his right to access to the courts.

12

(1:19CV1916)

*See also Maben v. Thelen*, 887 F.3d 252, 267 (6th Cir. 2018) ("Because this case [does] not involve *de minimis* retaliatory action, this question cannot be resolved as a matter of law.")

Plaintiff has also sufficiently pled that "the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X*, 175 F.3d at 394. In the case at bar, Plaintiff alleges that the files were deleted as "her campaign of harassment against Clay" after he filed a grievance against her. ECF No. 1 at PageID #: 7, ¶ 39; *see also Maben*, 887 F.3d at 262 (plaintiff need only demonstrate "his protected conduct was a motivating factor behind any harm") (quoting *Thaddeus-X*, 175 F.3d at 399). Plaintiff has demonstrated that he filed a complaint against her, continued to complain after he was restored to his law clerk position after originally being terminated, and Weidner subsequently deleted his legal filings. These allegations are sufficient at the pleading stage to form a plausible First Amendment retaliation claim.

In sum, Plaintiff's First Amendment retaliation claim against Weidner is time-barred to the extent it is based on Plaintiff's alleged firing. Plaintiff's denial of access to the courts claim is dismissed for failing to plead sufficient facts of prejudice. Plaintiff's First Amendment retaliation claim, however, concerning the allegations that Weidner deleted his legal documents, is not dismissed.

### C. Claims against the other Defendants

#### 1. Retaliation

Plaintiff also raises First Amendment retaliation claims against the following Defendants: Institutional Inspector Lisa Booth, Assistant Institutional Inspector Charles Moore, and Chief Inspector Roger Moore.

13

(1:19CV1916)

### a. Lisa Booth

First, the Court must determine whether Plaintiff engaged in protected conduct. The two potential instances of protected conduct for Plaintiff's claim are assisting other inmates and threatening to file a lawsuit. *See Clark v. Johnston*, 413 F. App'x 804, 814 n.5 (6th Cir. 2011).

The right of an inmate acting as a "jailhouse lawyer" to access the courts is "wholly derivative" from the other inmates' right to access the courts. *Thaddeus-X,* 175 F.3d at 395 (citation omitted). "[P]rison officials may prohibit or limit jailhouse lawyering unless doing so interferes with an inmate's ability to present his grievances to a court." *Id.* (citation omitted). In other words, Plaintiff must demonstrate that the other inmates he assisted "[were] incapable of pursuing [their] own grievances or had no other source of help." *Hermansen v. Ky. Dep't of Corr.*, 556 F. App'x 476, 477 (6th Cir. 2014). Plaintiff has sufficiently pled that neither of the inmates he assisted "could have prepared, articulated, or authored any of the legal documents" and were unable to type out their complaint at the grievance kiosk in the time allotted by the device. ECF No. 1 at PageID #: 7, ¶¶ 40-42. He also claims that duties at the law library included authoring complaints for other inmates and assisting them in articulating their claims. *Id.* ¶ 43. At this juncture, these facts sufficiently indicate that the inmates would have been unable to access the grievance process without Plaintiff's assistance.

Even if Plaintiff did not engage in protected conduct when he filed grievances for the other inmates, he did so when he threatened Booth and Charles Moore with a lawsuit for restricting his ability to file grievances. *See Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018) (noting that whether the threat to file a grievance was oral versus in writing was inconsequential); *see also*

14

(1:19CV1916)

*White v. McKay*, No. 18-1473, 2019 WL 5420092, at *2 (6th Cir. June 27, 2019) ("The claim of retaliation against these two defendants arguably states a claim. First, White's threat to file grievances against the defendants that were not obviously frivolous constituted protected conduct.") (citing *Pasley v. Conerly*, 345 F. App'x 981, 984-85 (6th Cir. 2009)). Additionally, the Court cannot conclude at this juncture that the threatened lawsuit against Defendants was frivolous or whether Plaintiff violated a legitimate prison regulation. *See, e.g.*, *Maben*, 887 F.3d at 266 (rejecting defendant's contention that even if plaintiff was engaged in protected activity he became disruptive and violated a legitimate prison regulation).

On the facts alleged at this early stage of litigation, the Court does not find that Plaintiff's threatened lawsuit against Defendants for restricting his access to the grievance process is patently frivolous. *Compare* ECF No. 1 (Plaintiff's Complaint) *with* *Scott v. Kilchermann*, 230 F.3d 1359, at *2 (6th Cir. 2000) (unpublished table decision) (plaintiff did not have a "constitutionally protected right to be free from verbal abuse"); *Thaddeus-X v. Love*, 215 F.3d 1327, at *3 (6th Cir. 2000) (unpublished table decision) (finding that plaintiff had not alleged he engaged in protected conduct because his grievance that the prison official was eating food at the prison guard desk was frivolous); *Herron*, 203 F.3d at 415; *Robinson v. Stephan*, No. 1:18-1166, 2018 WL 6444282, at *3 (W.D. Mich. Dec. 10, 2018) (grievance of "closing the recreation room a half hour early [was] . . . plainly frivolous."). The Court's analysis is also guided by the principle that Plaintiff's "allegations are to be construed in the light most favorable to him at this early stage of the proceedings." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).

Next, the Court considers whether Booth undertook adverse action against Plaintiff.

15

(1:19CV1916)

Although merely modifying an inmates' access to the grievance procedure is not enough to constitute an adverse action, Plaintiff appears to allege that he was being restricted from accessing the grievance procedure entirely.[3] *See Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005), *overruled on other grounds by Maben*, 887 F.3d at 262; *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005) ("As the district court found, this Court and other courts have noted that *placement on modified access status* does not impinge upon a prisoner's ability to file either meritorious grievances in prison or actions in federal court.") (emphasis added). Foreclosing an inmate's ability to file any grievances completely would arguably deter an ordinary person from engaging in protected conduct. *See Maben*, 887 F.3d at 267 (detailing other acts that prison officials allegedly engaged in that were considered to be an adverse action).

Additionally, even if the restriction on Plaintiff's access to the grievance procedure was inadequate to constitute an adverse action, Plaintiff has sufficiently pled that Booth took an adverse action against him by placing him in administrative segregation. *See Brown v. Crowley*, 312 F.3d 782 (6th Cir. 2002) ("[T]his court has concluded that placing a prisoner in administrative segregation is an adverse action.") (citations omitted); *see also Maben*, 887 F.3d at 266 (finding that the issuance of a minor misconduct ticket could constitute an adverse action).

Plaintiff has satisfied the third element because he has credibly suggested a but-for connection at this juncture. Plaintiff alleges that he was placed in administrative segregation

---

[3] Plaintiff alleges that Booth informed him that "he was being placed on restriction from the grievance procedure." ECF No. 1 at PageID #: 9, ¶ 50. As opposed to merely modifying his status, the term "restriction" implies that he was completely prohibiting from filing grievances.

16

(1:19CV1916)

shortly after he threatened to sue Booth and Charles Moore on the same day.  *See Maben*, 887 F.3d at 268 (noting that there was "a suspicious temporal proximity between Maben's grievance and the alleged retaliatory action" when plaintiff was disciplined "*immediately* after" plaintiff complained to the correctional officer) (emphasis in original); *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) ("[T]emporal proximity alone may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'") (citation omitted).

Additionally, Plaintiff's finding of guilt at a disciplinary hearing does not preclude a First Amendment retaliation claim.  *See Maben*, 887 F.3d at 262.  Plaintiff has sufficiently pled a First Amendment retaliation claim against Defendant Lisa Booth.

### b.  Roger Moore

The Court must also consider whether Plaintiff has alleged sufficient facts of First Amendment retaliation against Defendant Chief Inspector Roger Moore.  "Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior."  *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012).  In other words, " [t]o state a claim against a defendant in his individual capacity, plaintiff must allege personal involvement of the defendant in causing plaintiff's injury."  *Dotson v. Wilkinson*, 477 F. Supp. 2d 838, 847 (N.D. Ohio 2007) (citing *Hardin v. Straub*, 954 F.2d 1193, 1196 (6th Cir. 1992)).  A party cannot be held liable under Section 1983 "unless the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional

17

(1:19CV1916)

conduct." *Dotson*, 477 F. Supp. 2d at 847 (citing *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989)).

Plaintiff's claim against Chief Inspector Roger Moore pleads sufficient facts alleging direct engagement in the alleged retaliatory conduct.  Supervisors, such as Roger Moore, are liable when they "'either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Heyerman*, 680 F.3d at 647.  Plaintiff must demonstrate "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Taylor v. Larson*, 505 F. App'x 475, 478 (6th Cir. 2012) (citation omitted).  Plaintiff alleges that Chief Inspector Roger Moore ordered Plaintiff to be placed in administrative segregation.  *See* ECF No. 1 at PageID #: 17, ¶ 107.  Additionally, Plaintiff alleges that Roger Moore actively participated in the decision to bring an amended charge against Plaintiff after he was found not guilty of the original forgery offense.[4] *Id.* at 109.   Because Plaintiff has sufficiently alleged that Roger Moore engaged in the alleged retaliatory conduct against Plaintiff, Plaintiff's First Amendment retaliation claim survives.

---

[4] Although Plaintiff claims that Roger Moore "directed and conspired . . . to amend the alleged rule violation of forgery," *see* ECF No. 1 at PageID #: 17, ¶ 109, Plaintiff also alleges the warden's assistant, Scott Basquin, ordered the remand, *id.* at PageID #: 10, ¶ 65.

18

(1:19CV1916)

### c. Charles Moore

Next, the Court considers the First Amendment retaliation claim against Defendant Assistant Institutional Inspector Charles Moore.  Although Plaintiff has sufficiently pled that he engaged in protected conduct, he has not alleged that Charles Moore engaged in any adverse action against him.  Plaintiff's assertion that "C. Moore continuously conferred with Booth before confronting Clay," ECF No 1. at PageID #: 16-17, ¶ 103, or that Charles Moore denied Plaintiff's grievances against Weidner is insufficient to demonstrate that Charles Moore himself engaged in any retaliatory conduct.  The only other connection to Plaintiff's retaliation claim is Charles Moore's presence at the meeting where Plaintiff threatened to file a lawsuit.  Plaintiff has not suggested that Charles Moore played a role in drafting the conduct, restricting Plaintiff's access to the grievance procedure, ordering him to be placed in administrative segregation[5], or was actively involved in the adjudication of his charged offenses.  Notably, Plaintiff does not allege that Charles Moore had any role in the second RIB disciplinary hearing.  *See* ECF No. 1 at PageID #: 17, ¶ 109 ("R. Moore directed and conspired with Dolby, and Booth to amend the alleged rule violation of forgery to an inapplicable rule and making a finding of guilt against Clay in furtherance of the conspiracy that caused injury.")[6]  Plaintiff has failed to plead that Charles

---

[5] For his retaliation claim against Charles Moore, Plaintiff generally lists "[p]lacing Clay in segregation" as an instance of retaliatory conduct.  *See* ECF No. 1 at PageID #: 16, ¶ 102. Plaintiff alleges, however, that "[t]he pod officer informed Clay *that Booth wrote a conduct report*, and placed Clay in the hole." Accordingly, on the facts alleged, Plaintiff has not demonstrated that Charles Moore engaged in any retaliatory conduct against Plaintiff.

[6] As explained below, these facts are also relevant for Plaintiff's civil conspiracy

(continued...)

(1:19CV1916)

Moore engaged in any adverse action against him.  Accordingly, the retaliation claim against

Charles Moore is dismissed.

### d.  Kirk Dolby and Scott Basquin[7]

The Court construes Plaintiff's Complaint as raising retaliation claims against Defendants

Scott Basquin and Lieutenant Kirk Dolby, the officers who ordered a second hearing before the

RIB and the hearing officer who presided over the second hearing respectively.  *See* ECF No. 1 at

PageID #: 10, 65; #17, 105.  As explained above, Plaintiff has adequately demonstrated he

engaged in protected conduct.  Plaintiff alleges that, after a hearing that cleared him of all charges

except disrespecting Booth, Scott Basquin remanded the case back to the RIB for a second hearing

to "aid and abet Booth's retaliation" against Clay.  *Id.* at PageID #: 17, ¶ 105.  Additionally,

Plaintiff alleges that Dolby, who presided over the hearing, permitted the officer that drafted the

report, Lisa Booth, to participate, even after Booth blurted out "Me and the chief inspector still

think you're guilty of forgery and you ought to be found guilty."  *See id.* at PageID #: 11.  The

second hearing resulted in Clay being placed in administrative segregation for more time than he

--------

[6](...continued)
claim.

[7]  Defendants do not address any retaliation claims against Defendants Kirk Dolby
and Scott Basquin.  *See* ECF No. 7.  Although "a court cannot 'create a claim which [a
plaintiff] has not spelled out in his pleadings," *Brown v. Matauszak*, 415 F. App'x 608,
613 (6th Cir. 2011) (citation omitted and alterations made in original), courts are bound
to observe that pled.  The Court finds that Plaintiff has pleaded a retaliation claim against
Kirk Dolby and Scott Basquin under the liberal *pro se* pleading standard.  *See* ECF No. 1
at PageID #: 18, ¶ 112 (asking the Court for relief against, among other Defendants, "Kirk
Dolby and Scott Basquin to *cease their retaliation*.") (emphasis added); *see also id.* at
PageID #: 12, ¶ 78; 17, ¶ 105.

(1:19CV1916)

was originally sentenced after the first hearing, *id.* at PageID #: 11, ¶ 68.  *See Maben*, 887 F.3d at 266-67 (finding that because a misconduct ticket "did not involve a *de minimis* retaliatory action, this question cannot be resolved as a matter of law").  On the facts alleged at this stage, this is sufficient to suggest the remand for the second hearing, and the hearing itself, were adverse actions against Plaintiff.

Next, the Court considers whether Plaintiff has sufficiently pled a causal connection between his protected conduct and the adverse action of holding a second RIB hearing.  To establish causation, Plaintiff must demonstrate "the adverse action was motivated at least in part by the plaintiff's protected conduct."  *Thaddeus-X*, 175 F.3d at 394.  The Court may rely on circumstantial evidence to find that the causation element has been satisfied.  *See King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012); *see also Harris v. Bornhorst*, 513 F.3d 503, 519 (6th Cir. 2008) ("'Usually, the question of causation is a factual issue to be resolved by a jury, and may be satisfied by circumstantial evidence.'") (citation omitted).  With respect to Dolby, Plaintiff alleges that Dolby barred Plaintiff from bringing his written defenses to the second hearing but permitted the officer who wrote the conduct report against Plaintiff to participate as a panel member of hearing.  Moreover, Plaintiff was then found guilty of an amended charge and offenses he was originally acquitted for in the first hearing.  As a result of the second hearing, Plaintiff's time in administrative segregation was enlarged.  Plaintiff further suggests he was never provided with a written explanation of the findings and the lack of a written disposition foreclosed any appeal.  Plaintiff's Complaint " includes a 'chronology of event from which retaliation may plausibly be inferred.'" *Desmone v. Adams*, 165 F.3d 27, at *3 (6th Cir. 1998) (unpublished table

21

(1:19CV1916)

decision) (citation omitted); *see also Guile v. Schneider*, No. 1:15–cv–1069, 2017 WL 8135054, at * 9 (W.D. Mich. Dec. 27, 2017) (finding that plaintiff has sufficiently pleaded that the alleged retaliatory transfer to higher-security level prison was pretext). Taken together, this is sufficient circumstantial evidence indicating that Dolby's adjudication of the second hearing and amended charges were motivated in part by Plaintiff's protected conduct.

Additionally, this second hearing only occurred within a few weeks of Plaintiff's threatening to file a lawsuit.[8] Although not as immediate as Booth's order to place Plaintiff in administrative segregation after Plaintiff threatened to file the lawsuit, "temporal proximity between the protected conduct and the adverse action by the state actor" may be sufficient evidence of causation. *See Paige v. Coyner*, 614 F.3d 273, 283 (6th Cir. 2010) (one week after protected speech); *see also Ehrlich v. Kovack*, 135 F. Supp. 3d 638, 668 (N.D. Ohio 2015) (finding sufficient causal connection when termination occurred six months after plaintiff engaged in protected conduct). Furthermore, Plaintiff alleges that "Booth collud[ed] with Dolby to further her *retaliatory antics*" and that he "wilfully . . . aid[ed] and abet[ted]" Booth's retaliation, suggesting that Dolby's handling of the second hearing was motivated in part by Plaintiff's protected conduct. *See* ECF No. 1 at PageID #: 12, 77-78 (emphasis added). At the pleadings stage, the Court finds that Plaintiff has sufficiently pled the causation element for a First Amendment retaliation claim against Kirk Dolby at this stage.

---

[8] Plaintiff alleges that he was placed in administrative segregation on June 12, 2018, the first RIB hearing was conducted on June 22, 2018, and then the second hearing was held on June 28, 2018. ECF No. 1 at PageID #: 9-11.

(1:19CV1916)

The discussed evidence of causation applies with equal force to Scott Basquin.  Plaintiff alleges that Basquin ordered the second hearing be conducted and  "willfully . . .  den[ied] Clay a fair hearing when aiding, and abetting Booth's" retaliation.  *Id.* at PageID #: 17, ¶ 105.  In other words, Plaintiff alleges that Basquin remanded for a second hearing to retaliate against Plaintiff for engaging in protected conduct.  Given the temporal proximity and the aforementioned circumstantial evidence, Plaintiff has established causation at this juncture.  "And because [Plaintiff's] allegations are at least plausible, his complaint also establishes this element without being frivolous."  *Hill*, 630 F.3d at 476 (citations omitted).

In sum, Plaintiff has sufficiently pled First Amendment retaliation claims Defendants Lisa Booth, Chief Inspector Roger Moore, Lieutenant Kirk Dolby, and Scott Basquin.  Plaintiff's retaliation claim against Assistant Institutional Inspector Charles Moore, however, is dismissed.

### 2.  Procedural Due Process Claims

Plaintiff raises Fourteenth Amendment Due Process claims against Defendants Lieutenant Kirk Dolby and Scott Basquin.

In order to bring a Due Process claim, a prisoner must demonstrate that he has a constitutionally protected liberty interest.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  In the prison context, a liberty interest can only be found when the "segregation imposes an 'atypical and significant' hardship on the inmate 'in relation to the ordinary incidents of prison life.'" *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). "[A]dministrative segregation alone does not involve an 'atypical and significant' hardship

23

(1:19CV1916)

implicating a protected liberty interest." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). The length of the duration of segregation is a factor to be considered. *See Harden-Bey v. Rutter*, 524 F.3d 789, 793 (6th Cir. 2008) ("As *Sandin* and *Austin* indicate and as the cases from our sister circuits suggest, the duration of prison discipline bears on whether a cognizable liberty interest exists.") Plaintiff alleges that he was placed in segregation for around the same 30-days baseline set in *Sandin* found to not bestow a liberty interest.[9] 515 U.S. at 486; *see also Langford v. Koskela*, No. 16–1435, 2017 WL 6803554, at *3 (6th Cir. Jan. 24, 2017) (thirty days was insufficient to find a constitutionally protected liberty interest). Plaintiff's time in segregation does not come near the "extreme circumstances, such as when the prisoner's complaint alleged that he is subject to indefinite administrative segregation." *Joseph*, 410 F. App'x at 868 (citations omitted). Additionally, Plaintiff pleads no facts indicating that the administrative segregation affected the duration of his sentence. *See Sandin*, 515 U.S. at 486-87.

 Even if the prison failed to follow its own procedures during Plaintiff's second RIB disciplinary hearing, Plaintiff has not establish a liberty interest subject to the Due Process Clause. *See Grinter v. Knight*, 532 F.3d 567, 574-75 (6th Cir. 2008); *see also Ford v. Harvey*, 106 F. App'x 397, 399 (6th Cir. 2004).

 Because Plaintiff cannot demonstrate that he has endured a significant and atypical

---

 [9] Plaintiff was placed into administrative segregation on June 12, 2018, the first hearing was held, and then he remained in segregation until his second hearing on June 28, 2018. ECF No. 1 at PageID #: 9-11, ¶¶ 52-68. After the second hearing, Plaintiff was sanctioned to fourteen days in administrative segregation. *Id.* at PageID #: 11, ¶ 68.

(1:19CV1916)

hardship, he has no liberty interest protected under the Due Process Clause.  *Ford*, 106 F. App'x at 399.; *see also Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003).  Accordingly, his Due Process claims are dismissed.

### 3. Civil Conspiracy[10]

Plaintiff raises a claim for civil conspiracy against Defendants Lisa Booth, Chief Inspector Roger Moore, Lieutenant Kirk Dolby, Assistant Institutional Inspector Charles Moore, and Warden's Assistant Scott Basquin.

A claim for civil conspiracy alleges that there is "an agreement between two or more persons to injure another by unlawful action."  *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985).  Plaintiff must demonstrate that (1) there was a plan to conspire against him; (2) the alleged coconspirator shared in the general conspiratorial objective; and (3) and that an overt act was committed in furtherance of the conspiracy that caused injury to Plaintiff.  *See id.* (internal quotation marks omitted).  Civil conspiracy "must be pled with some degree of specificity, and vague and conclusory allegations unsupported by material facts are not sufficient to state a claim."  *Hamilton v. City of Romulus*, 409 F. App'x 826, 835 (6th Cir. 2010) (citation omitted).  The Sixth Circuit has indicated that "pleading requirements governing civil conspiracies are relatively strict."  *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (citation omitted).  Notwithstanding the strict pleading requirements, Plaintiff "may rely on circumstantial evidence to demonstrate an

---

[10]  Plaintiff's civil conspiracy claims implicate the intracorporate conspiracy doctrine recognized as applicable in Section 1983 actions in *Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019).  Defendants have not raised this affirmative defense in their motion to dismiss or Answer.  *See* ECF No. 7 at PageID #: 112-13; ECF No. 8.  Because of the potential prejudice to Plaintiff, the Court will not consider the doctrine in its ruling.

(1:19CV1916)

agreement among the conspirators." *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012)

(citations omitted)*.

### a. Charles Moore

A civil conspiracy claim cannot be properly pled if Plaintiff has failed to show that

unlawful action was taken against him. *See Bauss v. Plymouth Twp.*, 233 F. App'x 490, 500 (6th

Cir. 2007)*; Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). As explained above, Plaintiff has

failed to allege that Defendant Charles Moore engaged in unlawful activity so the civil conspiracy

claim against him must be dismissed.

### b. Lisa Booth, Roger Moore, Scott Basquin, and Kirk Dolby

Plaintiff has sufficiently alleged Defendants Lisa Booth, Roger Moore, Scott Basquin, and

Kirk Dolby undertook unlawful action against him. Plaintiff alleges that, in retaliation for

threatening to file lawsuits against them, these Defendants conspired to suppress his First

Amendment right to file grievances against correctional officers and to prevent him from assisting

other inmates with their legal filings. Plaintiff's allegations of conspiracy are not vague and he

has provided sufficient factual details to survive dismissal. Plaintiff alleges that Booth explicitly

stated that Booth and Roger Moore agreed to restrict his access to the grievance procedures due to

Plaintiff's abuse of the grievance process. Plaintiff subsequently threatened to sue Defendants.

On that same day, Lisa Booth, allegedly acting on orders from Roger Moore, placed him in

administrative segregation after the meeting with Plaintiff at which Plaintiff informed them he

could sue them for restricting his access to the grievance process. Plaintiff was then allegedly

(1:19CV1916)

given a hearing at which he was at first cleared of some of the charges against him.[11]  Scott

Basquin, allegedly to aid and abet Booth's retaliation against Plaintiff, remanded to RIB for a

second hearing and allegedly denied Plaintiff a fair hearing.  Plaintiff further alleges Roger Moore

and Booth actively participated in the decision to amend his offense to be charged in a second

hearing.[12]  In this second hearing, Lieutenant Kirk Dolby allegedly permitted Booth to participate

in the review of a new charge brought against him.  Booth then allegedly stated that both she and

Roger Moore thought that Plaintiff should have been found guilty of the original forgery offense.

Plaintiff is subsequently placed back in administrative segregation having been found guilty of the

newly amended charge against him, and all other charges raised in the original conduct report,

after having been acquitted of the original charges (other than disrespecting Booth) in the first

hearing.  He further claim he was never given the opportunity to appeal the RIB's decision

because he was never provided with the second hearing's disposition.  These alleged facts suggest

that there was an agreement between Lisa Booth, Roger Moore, Scott Basquin, and Kirk Dolby

and a shared conspiratorial objective, to retaliate against Plaintiff.

In sum, Plaintiff's civil conspiracy claims against Defendant Charles Moore is dismissed.

Plaintiff's civil conspiracy claims against Defendants Lisa Booth, Roger Moore, Scott Basquin,

and Kirk Dolby are not dismissed.

---

[11] In the first hearing, he was found guilty of disrespecting Booth.  ECF No. 1 at PageID #: 10, ¶ 60.

(1:19CV1916)

### C.  Motion to Strike

Plaintiff filed a sur-reply styled as a "Motion in Opposition to Defendant's Reply" without leave to do so.  Defendants moved for the sur-reply to be stricken.  Defendants' motion to strike is granted.  Plaintiff's motion in opposition to Defendant's reply (ECF No. 14) is stricken.

## IV.  Conclusion

For the reasons given above, Defendants' motion to dismiss is granted in part and denied in part.  Accordingly,

- All of Plaintiff's claims against Defendants in their official capacities are dismissed.

- Plaintiff's First Amendment retaliation claim against McKalee Weidner is time-barred to the extent it alleges any retaliatory conduct before Plaintiff was fired from his position as a law clerk.

- Plaintiff's retaliation claim against McKalee Weidner on his allegation that Weidner deleted his legal files remains.

- Plaintiff's denial of access to the courts claim against Weidner is dismissed.

- Plaintiff's First Amendment retaliation claim against Charles Moore is dismissed.

- Plaintiff's First Amendment retaliation claims against Lisa Booth, Roger Moore, Scott Basquin, and Kirk Dolby remain.

- All of Plaintiff's Fourteenth Amendment Due Process claims are dismissed.

- Plaintiff's civil conspiracy claim is dismissed against Defendant Charles Moore.

- As there are no remaining claims pending against him, Defendant Charles Moore is dismissed from this action.

28

(1:19CV1916)

- Plaintiff's civil conspiracy claims against Defendants Lisa Booth, Roger Moore, Scott

Basquin, and Kirk Dolby remain.

Defendants' motion to strike is granted.


IT IS SO ORDERED.


| | |
|---|---|
|     June 16, 2020     | _/s/ Benita Y. Pearson_          |
| Date | Benita Y. Pearson |
| | United States District Judge |

29